Amy Edwards, OSB No. 012492
amy.edwards@stoel.com
Crystal S. Chase, OSB No. 093104
crystal.chase@stoel.com
Kennon Scott, OSB No. 144280
kennon.scott@stoel.com
STOEL RIVES LLP
760 SW Ninth Ave., Ste. 3000
Portland, OR  97205
Telephone:  (503) 224-3380
Facsimile:  (503) 220-2480

Attorneys for Defendant Select Portfolio Servicing, Inc.

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| TERRI KWAKE, an individual and citizen of the State of Oregon,<br><br>              Plaintiff,<br><br>     v.<br><br>SELECT PORTFOLIO SERVICING, INC.; a Utah Corporation,<br><br>              Defendant. | Case No.: 6:15-CV-01713-MC<br><br>DEFENDANT SELECT PORTFOLIO SERVICING, INC.'S MOTION FOR SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM<br><br>(Telephonic Oral Argument Requested) |

## LOCAL RULE 7-1(a) COMPLIANCE

Pursuant to Local Rule 7-1(a), counsel for Defendant Select Portfolio Servicing, Inc.

("SPS") certifies and states that she conferred in good faith on the telephone with Terry Scannell,

counsel for Plaintiff Terri Kwake ("Plaintiff" or "Borrower") on September 29, 2016 and that the

Page 1   -   DEFENDANT SELECT PORTFOLIO SERVICING, INC.'S MOTION FOR SUMMARY JUDGMENT

parties were unable to resolve their dispute regarding the subject of this motion. Counsel for Plaintiff indicated that Plaintiff may be willing to dismiss the Second Claim for Relief (RESPA).

## MOTION

Pursuant to Federal Rule of Civil Procedure 56, SPS moves the Court for an order of summary judgment as to each of Plaintiff's three claims for relief. In support of this motion for summary judgment, SPS relies on the Declaration of L.C. Birkinshaw ("SPS Decl."), the Declaration of Crystal S. Chase ("Chase Decl."), the accompanying memorandum, and the pleadings and paper already on file in this case.

## MEMORANDUM

### I. BACKGROUND

**A.    The Loan.**

This action arises out of a dispute relating to Plaintiff's residential loan. On or about January 12, 2007, Plaintiff executed a Note in the amount of $292,000.00 ("Note"). (SPS Decl. ¶ 3.) As security for the Note, Plaintiff also executed a Deed of Trust ("Trust Deed") for residential property legally commonly known as 25951 Highway 36, Cheshire, Oregon 97419 ("Property"). (*Id.* ¶ 3 & Ex. 2.) The Trust Deed was duly recorded in the official records of Lane County, Oregon as Instrument No. 2007-005047 ("Trust Deed"). (*Id.*) Collectively, the Note and the Trust Deed are referred to as the Loan. The Note and Trust Deed have been assigned to U.S. Bank National Association, as Trustee, in trust for the registered holders of Citigroup Mortgage Loan Trust, Asset-Backed Pass-Through Certificates, Series 2007-AHL3 (the "Trust"). (*Id.* ¶ 3.) SPS has been the mortgage loan servicer for the Loan since August 16, 2013, when servicing transferred from Bank of America, N.A. ("BANA"), the master servicer, to SPS as subservicer. (*Id.* ¶ 2 & Ex. 1.)

**B.       Plaintiff's Prior Lawsuit Against BANA.**

Plaintiff previously sued non-party Bank of America, N.A. ("BANA") as part of a putative class action captioned *Maria Campusano, et al v. BAC Home Loan Servicing LP, et al*, Central District of California Case No. 2:11-cv-04609 ("California Action"). In the California Action, Plaintiff alleged that BANA was the servicer on a residential mortgage she obtained for her home at 25951 Highway 36, Cheshire, Oregon 97419. (Chase Decl. Ex. 1 (California Action, Dkt. #33 (Second Am. Compl. ¶ 21)).) Plaintiff further alleged that she defaulted on her residential loan on or around August 2009 and that she subsequently attempted to enter into a loan modification agreement with BANA in 2010. (*Id.* (Second Am. Compl. ¶¶ 295 - 310).) In the California Action, Plaintiff brought claims for breach of contract and violation of state consumer protection statutes arising out of BANA's handling of her loan modification. (*Id.*; *see also* Plaintiff's First Amended Complaint [Dkt. No. 10] ("Complaint" or "Compl.") ¶¶ 6-7.) After class certification in the California Action was denied, Plaintiff settled her claims against BANA. (Compl. ¶¶ 10, 31.) Plaintiff's claims against BANA in the California Action were dismissed with prejudice by stipulation of the parties. (Chase Decl. Exs. 2-3 (California Action, Dkt. #248, 249).) Plaintiff has not named BANA as a defendant in this action.

**C.       Plaintiff Does Not Qualify For A National Mortgage Settlement Loan Modification.**

After SPS had started servicing the Loan, SPS sent an October 9, 2013 letter to Plaintiff relating to a loan modification program that resulted from a national mortgage settlement ("NMS") between the United States and state attorney generals and, *inter alia*, BANA ("October 9 Letter"). (SPS Decl. ¶ 5 & Ex. 4.) The October 9 Letter provided, in part:

> We are pleased to let you know that you meet the criteria required
> to apply for a new modification program recently announced as a
> result of the U.S. Department of Justice and State Attorneys
> general national settlement.

Page 3   -   DEFENDANT SELECT PORTFOLIO SERVICING, INC.'S MOTION FOR
             SUMMARY JUDGMENT

> If you qualify for this modification, any past due late fees will be waived, interest and advances that we paid on your behalf will be added to your principal balance, principal reduction will be applied and your loan will be brought up to date. . . . .

(*Id.* Ex. 4 at 1.)  The letter offered no modification terms (such as monthly payment, interest rate, etc.), rather is explained that "you must apply for this modification to see if you qualify."  (*Id.*)  It instructed Plaintiff to submit certain information by a deadline, and explained that "[w]ithin 30 days of receiving all of your documents, we will send you an approval or decline letter explaining next steps."  (*Id.* Ex. 4 at 2.)

SPS then sent a follow up letter dated October 15, 2013 ("October 15 Letter").  That letter identified three possible responses that Plaintiff could receive to the information that she submitted:

> Once we have received all documents requested, we will complete the evaluation.  This will take approximately 30 days.  Upon completion of the evaluation, you will receive **one** of these three responses:
>
> - Your loan has been approved to begin a Trial Period.  This notification will come in the form of a Trial Period Plan letter, and will provide you details of your Trial Period Plan and instructions on how to proceed.  You will have at least 14 days to accept the offer (the actual number of days will be in the offer letter)
>
> - *Your loan is not eligible for this program, but may be eligible for other foreclosure prevention alternatives.*  This notification will come in the form of a letter describing other options such as a different modification program, short sale or deed-in-lieu of foreclosure.
>
> - SPS needs more information from you to make a determination as to eligibility.  SPS will either call you or send you a letter with this request.

(*Id.* Ex. 5 at 1 (emphasis added).)

Page 4  -    DEFENDANT SELECT PORTFOLIO SERVICING, INC.'S MOTION FOR
             SUMMARY JUDGMENT

88371179.1 0052161-02921

After Plaintiff submitted the requested information, SPS sent Plaintiff a letter dated December 4, 2013 explaining that Plaintiff's Loan was not eligible for an NMS loan modification ("December 4 Letter"). (*Id.* Ex. 6 at 1.) That letter explained that the Loan "is not eligible for a modification because the loan-to-value (LTV) ratio on your property (calculated as the total amount you owe on the loan divided by our estimate of the current market value of your home) must be greater than 100." (*Id.*) However, Plaintiff subsequently received a modification of her Loan in October 2014. (*Id.* Ex. 3.) At the time that this litigation was initiated in September 2015, Plaintiff was current on her Loan. (*Id.* ¶ 4 & Ex. 3.)

## II.  DISCUSSION

### A.  Summary Judgment Standard.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). No dispute exists "'where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party.'" *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 500 (9th Cir. 1992) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). To defeat a motion for summary judgment, the non-moving party must "'set forth specific facts' that show a genuine issue for trial." *Leisek v. Brightwood Corp.,* 278 F.3d 895, 898 (9th Cir. 2002) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24 (1986)). If the evidence favoring the non-moving party "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby,* 477 U.S. 242, 249-50 (1986) (citations omitted).

B.  **SPS Is Entitled to Summary Judgment on Plaintiff's First Claim for Relief (Breach of Contract) Because No Agreement to Modify Plaintiff's Loan Was Ever Reached Between the Parties.**

For a contract to be formed under Oregon law, "there must be a meeting of the minds as to all of its terms" and "nothing can be left for future negotiations." *Phillips v. Johnson*, 266 Or. 544, 555, 514 P.2d 1337, 1343 (1973).  Further, "[i]f any portion of the contract is not agreed upon, or if no method is agreed upon by which such a term or provision can be settled, there is no contract." *Id.*; *see also Barinaga v. JP Morgan Chase & Co.*, 749 F. Supp. 2d 1164, 1177–78 (D. Or. 2010) (a meeting of the parties' minds on the essential terms of an agreement is required to prove such an agreement).

Plaintiff's breach of contract claim is based on the theory that the SPS Letter was an "offer" to enter into a loan modification with Plaintiff, and therefore Plaintiff's submission of the requested documents was an acceptance, requiring SPS to provide Plaintiff with a loan modification.  (Compl. ¶¶ 34-38.)  However, the letter offered no modification terms (such as monthly payment, interest rate, etc.).  (*See* SPS Decl. Ex. 4; *see also id.* Ex. 5.)  This alone means the letter was not sufficient to create a valid and enforceable contract.  *Compare Barinaga v. JP Morgan Chase & Co.*, 749 F. Supp. 2d 1164, 1177–78 (D. Or. 2010) (no binding agreement to modify loan where borrower and lender failed to agree on the interest rate, payment term or how the principal and unpaid interest would be paid at the end of the term) *with Bixler v. First Nat. Bank of Oregon*, 49 Or. App. 195, 199, 619 P.2d 895, 898 (1980) (promise to modify loan sufficiently definite where bank provided the terms of the proposed loan and the annual interest rate); *see also Gass v. CitiMortgage, Inc.*, No. 1:11-CV-3713-RWS-JSA, 2012 WL 3201400, at *8–9 (N.D. Ga. June 25, 2012), report and recommendation adopted, No. 1:11-CV-3713-RWS, 2012 WL 3156770 (N.D. Ga. July 19, 2012) ("no binding contract is formed when a

lender offers to permanently modify a loan in the future, pursuant to undefined terms"); *see generally Klimek v. Perisich*, 231 Or. 71, 78–79, 371 P.2d 956, 960 (1962) ("An offer must be certain so that upon an unqualified acceptance the nature and extent of the obligations of each party are fixed and may be determined with reasonable certainty."); *Sequoia Partners, LLC v. Federal Deposit Ins. Corp.*, Civ. No. 1:11-3057-CL, 2012 WL 1657049, at *3 (Mar. 13, 2012) (interest rate and payment terms are "terms essential to form an agreement [to lend money]").

Moreover, the letter explained that "you must apply for this modification to see if you qualify." (SPS Decl. Ex. 4 at 1.) Therefore, at most, it was an invitation to submit an application to be considered for a loan modification. It was not an offer sufficient to create a binding contract between the parties. *See Schlosser v. Clackamas Water Dist.*, 60 Or. App. 617, 622, 655 P.2d 194, 196 (1982) (an "invitation to negotiate does not constitute an offer"); *see also Mizrahi v. Wells Fargo Home Mortgage*, No. CASE209-CV-01387-RLH, 2010 WL 2521742, at *3 (D. Nev. June 16, 2010) (letter offering to consider loan modification if borrowers submitted application and certain financial documentation was not a valid offer); *Choe v. Bank of Am., N.A.*, No. 3:13-CV-0120-D, 2013 WL 6159308, at *3 (N.D. Tex. Nov. 25, 2013) (same). For all of these reasons, Plaintiff's First Claim for Relief (Breach of Contract) must be dismissed.

C.     **SPS Is Entitled to Summary Judgment on Plaintiffs Second Claim for Relief (RESPA) Because that Claim Fails as a Matter of Law.**

In her Second Claim for Relief, Plaintiff alleges that SPS violated the Real Estate Settlement Procedures Act ("RESPA"). Plaintiff's RESPA claim is based on the allegation that SPS failed to comply with 12 C.F.R. § 1024.41, one of the federal regulations implementing RESPA ("Section 1024.41"). Section 1024.41 took effect on January 10, 2014. Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act ("Regulation X"), 2013 WL 52534778, FR 10696-01 (February 14, 2013). Although Section 1024.41 sets out certain

procedures a servicer should follow in reviewing loss mitigation applications, it does not compel a specific substantive result. Rather, it specifically provides:

> ". . . Nothing in § 1024.41 imposes any duty on a servicer to provide a borrower with any specific loss mitigation option. Nothing in § 1024.41 should be construed to create a right for a borrower to enforce the terms of any agreement between a servicer and the owner or assignee of a mortgage loan, including with respect to the evaluation for, or offer of, any loss mitigation option or to eliminate any such right that may exist pursuant to applicable law."

12 C.F.R. § 1024.41(a).

As relevant to this action, Section 1024.41 requires that a servicer who receives a loss mitigation application submission "45 days or more before a foreclosure sale" shall promptly acknowledge receipt of the application, notify the borrower if that application is complete or incomplete, and, if incomplete, identify the additional documents necessary to make the loss mitigation application complete. *Id.* § 1024.41(b)(2). A servicer who receives a loss mitigation application submission "more than 37 days before a foreclosure sale" shall evaluate a borrower for all loss mitigation options within 30 days of receiving a complete loss mitigation application and provide borrower with a written notice identifying "the servicer's determination of which loss mitigation options, if any, it will offer to the borrower." *Id.* § 1024.41(c). If a complete loss mitigation application is deemed complete, "a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale" unless certain exceptions are met. *Id.* § 1024.41(g).

Plaintiff's RESPA claim is first based on the theory that, although "Plaintiff's loss mitigation application was submitted more than 45 days before the scheduled sale," SPS "failed to comply with" the above-identified obligations in Section 1024.41(b) or (c). (Compl. ¶¶ 40, 41.) Plaintiff further alleges that, because Plaintiff's loss mitigation application was

Page 8   -   DEFENDANT SELECT PORTFOLIO SERVICING, INC.'S MOTION FOR
              SUMMARY JUDGMENT

deemed complete by SPS's failure to respond, SPS was "prohibited from pursuing a foreclosure sale," yet SPS violated this obligation by "failing to take any action to cancel the foreclosure sale." (*Id.* ¶¶ 42, 43.) The fatal flaw with this theory is that no judicial or nonjudicial foreclosure proceedings were pending while SPS serviced the Loan (either before or after Section 1024.41 took effect), so no foreclosure sale was ever scheduled. (SPS Decl. ¶¶ 8-10 & Exs. 6-7.)[1] Additionally, to the extent that Plaintiff's claim seeks relief for any actions taken by SPS in 2013, those actions cannot form a basis for a violation of Section 1024.41, because that regulation had not yet taken effect. "Regulation X," 2013 WL 52534778, FR 10696-01 (February 14, 2013 (noting that final rule is effective on January 10, 2014).[2]

For all of the reasons identified above, SPS is entitled to summary judgment on Plaintiff's Second Claim for Relief (RESPA).

**D.    SPS Is Entitled to Summary Judgment on Plaintiff's Third Claim for Relief (OUTPA) Because It Is Unsupported by Law or Fact.**

In her Third Claim for Relief, Plaintiff alleges that SPS violated the Oregon Unfair Trade Practices Act ("OUTPA").

---

[1]    A non-judicial foreclosure had been initiated in April, 2012, while BANA was servicing the Loan, but that was rescinded on June 13, 2012—before SPS began servicing the Loan. (SPS Decl., Ex. 8.)

[2]    To the extent that Plaintiff's RESPA claim attempts to advance a second theory of relief relating to a failure to respond to a qualified written request/notice of error, Plaintiff fails to plead facts showing that any communications with SPS identifying Plaintiff's disagreement with broker price opinions satisfy the specific definition of "qualified written requests" under RESPA. That is a basis for dismissal of her claim. *See Lettenmaier v. Federal Home Loan Mortg. Co.*, CV-11-156-HZ, 2011 WL 3476648, at *12 (D. Or. Aug. 8, 2011) (holding that a plaintiff fails to allege a RESPA violation when a plaintiff "fail[s] to attach a copy of their correspondence to the Complaint or to allege facts showing that the communication concerned servicing of the loan as defined by the statute").

Page 9   -   DEFENDANT SELECT PORTFOLIO SERVICING, INC.'S MOTION FOR SUMMARY JUDGMENT

Plaintiffs' OUTPA claim is based on O.R.S. § 646.608(1)(u),[3] which provides that a defendant violates the OUTPA if it "[e]ngages in any other unfair or deceptive conduct in trade or commerce." This provision is not a catch-all provision for purportedly deceptive trade practices not covered in another subsection of O.R.S. § 646.608(1). Rather, "[i]n order to bring a claim under ORS 646.608(1)(u), the Oregon Attorney General must first establish a rule declaring the conduct to be unfair or deceptive." *Moore v. Wells Fargo Bank, NA*, No. 3:13-CV-00170-PA, 2013 WL 3965313, at *4 (D. Or. Aug. 1, 2013) (citing O.R.S. § 646.608(4)); *see also* O.R.S. § 646.608(4) ("An action or suit may not be brought under subsection (1)(u) of this section unless the Attorney General has first established a rule in accordance with the provisions of ORS chapter 183 declaring the conduct to be unfair or deceptive in trade or commerce.").

Plaintiffs point to a single administrative rule in support of their claims that SPS violated O.R.S. § 646.608(1)(u): OAR 137-020-0805. According to Plaintiff, SPS violated subsections (3) and (6) of this rule – which provide that a mortgage loan servicer engages in unfair or deceptive conduct if it either "[m]isrepresents to a borrower any material information regarding a loan modification" or "[f]ails to deal with a borrower in good faith" – in two ways. First, Plaintiff alleges that SPS represented to Plaintiff and the public that SPS had a "financial incentive to modify the loans of homeowners." (Compl. ¶ 54.) However, Plaintiff's complaint is entirely devoid of any specifics about how, when, where or why SPS made this alleged representation to either Plaintiff or the public, and there is no evidence that SPS ever did so. Second, Plaintiff alleges that SPS, "for the purpose of increasing fees and other consideration owed by Plaintiff," induced Plaintiff "to believe that there was no workable loan modification

---

[3] Plaintiff also claims that SPS violated ORS 646.608(4), but that subsection does not set out any prohibition against any unfair trade practice. Therefore, to the extent Plaintiff's OUTPA claim relies on ORS 646.608(4), it fails as a matter of law.

Page 10 -   DEFENDANT SELECT PORTFOLIO SERVICING, INC.'S MOTION FOR SUMMARY JUDGMENT

programs available to [her]." (Compl. ¶ 55.) However, the evidence is undisputed that Plaintiff applied for and received a loan modification in October 2014. (SPS Decl. ¶ 4 & Ex. 3.) Therefore, there is no question of fact as to whether Plaintiff was induced to believe she would not receive a loan modification.

For all of these reasons, SPS is entitled to summary judgment on Plaintiff's OUTPA claim.

### III.  CONCLUSION

For the foregoing reasons and pursuant to Federal Rule of Civil Procedure 56, SPS respectfully requests that the Court grant summary judgment on Plaintiff's claims for relief.

DATED:  September 29, 2016.

                              STOEL RIVES LLP

                              *s/ Crystal S. Chase*
                              AMY EDWARDS, OSB No. 012492
                              CRYSTAL S. CHASE, OSB No. 093104
                              KENNON SCOTT, OSB No. 144280
                              Telephone:  (503) 224-3380

                              Attorneys for Defendant