IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TERRI KWAKE,

        Plaintiff,

    v.

SELECT PORTFOLIO SERVICING, INC.,
a Utah Corporation,

        Defendant.

Civ. No. 6:15-cv-01713-MC

OPINION AND ORDER

**MCSHANE, Judge**:

    Defendant Select Portfolio Services, Inc. ("SPS") moves for summary judgment (ECF No. 50) against each of Plaintiff's three claims for relief: breach of contract, fraud, and violation of the Oregon Unfair Trade Practices Act ("OUTPA"). Am. Compl., ECF No. 70. The claims arise from a letter that SPS sent to Ms. Kwake, inviting her to apply for a mortgage loan modification, as well as the subsequent denial of the modification. The defense argues 1) that the invitation to apply for a loan modification does not constitute a binding contract; 2) that the fraud claim is time-barred and unsupported by the facts, and 3) that the OUTPA claim is unsupported by law or fact. Because the invitation to apply for a loan modification does not constitute a contract, SPS Motion for Summary Judgment (ECF No. 50) is GRANTED in part. The Motion is DENIED in part as to the claims for fraud and OUTPA as outlined below

1 – OPINION AND ORDER

**FACTUAL BACKGROUND**

On January 12, 2007 Ms. Kwake executed a home mortgage note in the amount of $292,000 and an accompanying deed of trust. Am. Compl., ECF No. 70; Birkinshaw Decl. ¶ 3 & Ex. 2, ECF No. 34. Bank of America, N.A. ("BANA") was the loan servicer until August 15, 2012 when servicing transferred to its affiliate SPS effective August 16, 2012. Birkinshaw Decl. ¶ 2 & Ex. 1, ECF No. 34.

By letter dated October 9, 2013 SPS invited Ms. Kwake to apply for a loan modification program. Am. Compl. Ex. 1, ECF No. 70; Birkinshaw Decl. Ex. 4, ECF No. 34. The loan modification program was the result of the national mortgage settlement ("NMS") reached between the U.S. Department of Justice and 49 State Attorneys General and the nation's five largest mortgage servicers: BANA, JP Morgan Chase & Co., Wells Fargo & Company, Citigroup Inc, and Ally Financial Inc. (formerly GMAC). *United States, et al. v. Bank of America Corp. et al.,* 1:12-cv-00361-RMC, U.S. Dist. Ct. D.C., Consent Judgment, April 4, 2012. As part of the settlement agreement the servicers agreed to collectively dedicate $20 billion toward various forms of financial relief to borrowers. At least $3 billion was required to go toward refinancing loans for borrowers who were current on their mortgages but who owed more on their mortgage than their homes were currently worth.

Ms. Kwake responded to SPS by mailing in the requested documentation. On October 15, 2013 SPS sent a follow up letter acknowledging receipt of the initial information and requesting that additional information be sent. Birkinshaw Decl. Ex. 5, ECF No. 34. Plaintiff followed up and sent in the requested information. On December 4, 2013 SPS sent a letter stating the mortgage loan was ineligible for a modification because the loan-to-value (LTV) ratio was not greater than 100%. Am. Compl. Ex. 2, ECF No. 70-2. This is the only reason given for

ineligibility. The letter stated the value of plaintiff's property to be $388,000, greater than the outstanding loan amount ($380,000) and therefore ineligible for the modification. In making their determination on eligibility SPS relied solely on an appraisal value received from BANA. Pl.'s Resp., Ex. 3, SPS Dep. 6:5-17, ECF No. 57-3.

Ms. Kwake wrote SPS on March 17, 2014 contesting the stated valuation of the property. Chase's Suppl. Decl. Ex. 3, ECF No. 51-3. Plaintiff included in the letter two recently obtained appraisals to show that the current property value was in a range of $189,225 to $258,000. Consistent with these valuations, SPS's had in its own file an appraisal dated September 26, 2013 placing the property value at $256,500.00. Am. Compl. Ex. 3, ECF No. 70-3. Despite this, SPS refused to consider Ms. Kwake eligible for the loan modification program. Sometime in October 2014 plaintiff received a different type of loan modification, but one with less favorable financial terms. Chase's Suppl. Decl. Ex. 2, ECF No. 51-2.

## **STANDARD OF REVIEW**

The court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). An issue is "genuine" if a reasonable jury could return a verdict in favor of the non-moving party. *Rivera v. Phillip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is "material" if it could affect the outcome of the case. *Id.* The court reviews evidence and draws inferences in the light most favorable to the non-moving party. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)). When the moving party has met its burden, the non-moving party must present "specific facts showing that there is a genuine issue for trial."

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (quoting Fed. R. Civ. P. 56(e)).

## DISCUSSION

### I. Breach of Contract

      Defendant moves for summary judgment against Plaintiff's breach of contract claim for the reason that a contract does not exist between the parties. Def.'s Mot. 6-8, ECF No. 50. Defendant argues a contract requires a meeting of the minds as to all material terms and here there is no evidence the parties reached an agreement on material terms for a loan modification. *Phillips v. Johnson*, 266 Or. 544, 555 (1973); *Barinaga v. JP Morgan Chase & Co.*, 749 F. Supp. 2d 1164, 1177-78 (D. Or. 2010). Plaintiff responds that there was a unilateral contract. Pl.'s Resp. 10-12, ECF No. 57. A unilateral contract is one in which one party makes a promise in return for consideration other than a promise. *Homestyle Direct, LLC v. Dep't of Human Servs.*, 354 Or. 253, 268 (2013); *Restatement (Second) of Contracts* § 45 (1981). Plaintiff alleges that the October 9, 2013 letter sent from SPS to plaintiff constituted an offer inviting Ms. Kwake to accept a unilateral contract with performance by completing, signing and returning the enclosed documents by the specified date. Plaintiff's arguments focus on certain operative words contained within the October 9, 2013 letter such as "you meet the criteria" and "customers will receive." A stamp prominently displayed at the top of the letter reads:

> "IMPORTANT MESSAGE"
> You meet the criteria to apply for a modification program as part of a national mortgage settlement. Qualifying customers will receive significant principal reduction and may reduce their monthly payment up to 35%.
>
> Please complete, sign and return all the enclosed documents by 10/24/2013 to see if you qualify.

Am. Compl. Ex 1, ECF No. 70-1.

4 – OPINION AND ORDER

Those arguments however ignore the conditional language dispersed throughout the letter as well as the lack of material terms to the agreement such as an interest rate, principal amount, payment dates or other terms of the loan. The "Important Message" invites the plaintiff to "apply for a modification program" in the same way that a mailing from a credit card company typically invites an individual to apply for a new credit card. Plaintiff is told she qualifies to apply; not that she qualifies for the loan modification. The "modification program" mentioned in the letter is qualified with the article "a" which indicates that there is not one specific modification program to be accepted. While Plaintiff may see monthly payments reduced up to 35%, the letter itself does not pin down the material term of a specific percentage reduction leaving open the possibility that monthly payment reduction may be less than 35%.

The case of *Pharmaceutical Ass'n v. Welfare Com.* provides an example where a unilateral contract was found to exist with clearly articulated terms. In that case the State Public Welfare Commission offered to reimburse specific costs to any pharmacist that provided prescription drugs to eligible recipients of public assistance. 248 Or. 60, 64-65 (1967). The amount of reimbursement was published in a "Drug Guide." The Commission required no promise or commitment in advance. The Drug Guide though was found to contain "detailed instructions regarding the operation of the Drug Welfare Program" to include terms setting the purchase price with reimbursement ceilings. The Drug Guide was sent to each registered pharmacist in the state.

In contrast, the October 9, 2013 letter received by Plaintiff does not offer any specificity with regard to material terms reasonably related to an extension of credit. *See Barinaga*, *supra*, 749 F. Supp. 2d at 1177 (The agreement does not address interest rate, payments term, or how the principal and accruing interest would be paid over the 30-year loan term.). Because the letter

5 – OPINION AND ORDER

fails to specify material terms and because it is phrased in conditional language, I find that it does not constitute a contract.

## II. Fraud

The second claim for relief of fraud alleges that defendant SPS knowingly misrepresented to Plaintiff that she did not qualify for a loan modification because the value of her house was worth more than the outstanding loan amount. Am. Compl. 40-47, ECF No. 70. Plaintiff contends that in truth the value of her house was less than the outstanding loan amount meeting the qualifications for a modification and that SPS knew this fact but nonetheless made the misrepresentation so that plaintiff would not seek to participate in the loan modification program.

### A. Statute of limitation

Defendant moves for summary judgment against the claim as time-barred by the statute of limitation, ORS 12.110(1). Def.'s Mot. 8-9, ECF No. 50. An action for fraud must be commenced within two years from the discovery of the fraud. ORS 12.110(1). Discovery of the fraud is determined by when the plaintiff knew or should have known in the exercise of reasonable diligence that the defendant's conduct was tortious. *Salem Sand & Gravel Co. v. Salem*, 260 Or. 630, 637 (1971). Defendant asserts that Plaintiff knew of or should have known the alleged facts underlying her fraud claim by March 17, 2014. Plaintiff did not allege fraud though until October 24, 2016 when she filed her Second Amended Complaint (ECF No. 41) after the two years statute of limitation had run.

SPS first represented to Ms. Kwake the value of the property to be $388,000.00 by way of letter dated December 4, 2013. Birkinshaw's Dec. Ex. 6, ECF No. 34; Am. Compl. Ex. 2, ECF No. 70-2. The December 4, 2013 letter represented that Plaintiff's mortgage loan was ineligible for the principal forgiveness modification program because the loan-to-value (LTV) ratio of her

property was not greater than 100%. The total amount owed on the loan was less than the value of the property. By way of a letter dated March 17, 2014, Ms. Kwake disputed SPS's representations as to the value of the property. Chase's Suppl. Decl. Ex. 3, ECF No. 51-3. In the March 17, 2014 letter Ms. Kwake writes she does "not know where [the bank] get the $388 K" valuation. *Id*. Plaintiff included in the letter two recently obtained appraisals to show that the house's value at the time to be in the range of $189,225 to $258,000 and well below the outstanding loan amount. Based on the letter and the depositions of Ms. Kwake and her husband, Defendant argues that Plaintiff knew or should have known by at least March 14, 2014 that she had a factual basis for making a claim for fraud.

While the March 14, 2014 letter demonstrates Plaintiff disagreed with Defendant's valuation of the property, the communications between the parties at this time did not put Plaintiff on notice that Defendant was deliberating misrepresenting facts or intentionally misleading the plaintiff. Fraud is not a tort of simple misunderstanding or disagreement, but requires tortious conduct. Ms. Kwake did not become aware that SPS may have known the representation was false or intended to mislead the plaintiff until August 17, 2016 when, in the course of discovery, Defendant disclosed from its files a property appraisal dated September 26, 2013 (three months before the letter denying eligibility). That appraisal valued the property at $256,500, an amount that would have qualified Plaintiff for the loan modification program. Am. Compl. Ex. 3, ECF No. 70-3. After discovering that Defendant had information contrary to the position it took when denying Ms.Kwake a loan modification, Ms. Kwake timely filed the amended complaint alleging fraud. In addition, irrespective of the discovery rule, because the fraud claim arose out of the same conduct and occurrence set out in the original pleading, the

7 – OPINION AND ORDER

claim relates back to the date of the original pleading filed September 10, 2015 pursuant to Fed. R. Civ. Proc. 15(c)(1)(B).

## B. Elements of fraud

A claim for fraud consists of five elements: (1) the defendant made a false representation of material fact; (2) the defendant knew or believed the representation was false, or with an insufficient basis for asserting that it was true; (3) the defendant intended to mislead the plaintiff; (4) the plaintiff reasonably relied on the representation; and (5) the plaintiff was damaged as a result of that reliance. *Commc'ns Grp., Inc. v. GTE Mobilnet of Oregon*, 127 Or. App. 121, 126 (1994); citing *Riley Hill Gen. Contractor, Inc. v. Tandy Corp.*, 303 Or. 390, 405 (1987). Defendant argues that no reasonable fact-finder could conclude in plaintiff's favor on the fourth element that Plaintiff reasonably relied on intentionally false statements by SPS. Def.'s Mot. 10, ECF No. 50. Defendant argues that Ms. Kwake did not take any action in reliance of the December 4 letter, but rather she disputed SPS's denial of the loan modification and SPS's statement that the property was valued at $388,000. Defendant also argues Plaintiff cannot prove damages. I disagree. I find that a factfinder could conclude that Plaintiff reasonably relied on the statements made by Defendant and can come to a conclusion on proof of damages. Plaintiff continued to pay her mortgage on the original terms of her loan. She also later accepted a loan modification with terms less favorable than the ones available under the NMS loan modification program.

## III. Oregon Unfair Trade Practices Act

Plaintiff's third claim for relief alleges violation of the Oregon Unfair Trade Practices Act (OUTPA). Am. Compl. ¶ 49-55, ECF No. 70. Defendant allegedly violated ORS § 646.607, ORS § 646.608(1)(u), and OAR 137-020-0805 resulting in an ascertainable loss as a result of the

unfair trade practice. Potential damages amounts are actual damages of $313,944.04, plus punitive damages of $5.07 million, together with attorney's fees and costs. ORS § 646.808(1)(u) states that: "[a] person engages in an unlawful practice if in the course of the person's business, vocation or occupation the person * * * (u) Engages in any other unfair or deceptive conduct in trade or commerce." OAR 137-020-0805 became effective July 24, 2012 and declares certain practices relating to mortgage loan servicing to be unlawful trade practices to include misrepresenting any material information regarding a loan modification, failing to comply with certain provisions of the Real Estate Settlement Procedures Act, and failing to deal with a borrower in good faith. OAR 137-020-0805(3), (5), & (6).

Defendant's motion focuses on paragraphs 52 and 53 of plaintiff's complaint without addressing the broader wrongful conduct alleged in paragraphs 1 through 50. The OUTPA claim stems from an offer to apply for a loan modification and the subsequent denial on specific misrepresentations by defendant. There is sufficient evidence in the record that, if proven, to allow a factfinder to conclude that a violation of the OUTPA has occurred.

## CONCLUSION

Defendant SPS's Motion for Summary Judgment, ECF No. 50, is GRANTED in part with respect to the breach of contract claim and DENIED in part as to the claims for fraud and violation of OUTPA.

IT IS SO ORDERED.

Dated this 1st day of February, 2017.

Michael McShane
United States District Judge